UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICANS FOR IMMIGRANT JUSTICE, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*,<br><br>Defendants. | Civil Action No. 22-3118 (CKK) |

**MEMORANDUM OPINION**
(July 6, 2023)

This case concerns conditions of confinement at four immigration-detention facilities. Plaintiffs are not detainees, but their respective counsel. Each Plaintiff is affiliated only with one particular facility, and each facility is physically located in a different jurisdiction, none of which is the District of Columbia. Similarly, no Plaintiff has any ties to the District of Columbia. Defendants have moved to sever the case into four and transfer each sub-case to its appropriate jurisdiction. Upon consideration of the briefing,[1] the relevant authorities, and the record as a whole, Defendants' [93] Motion to Sever and Transfer Venue is **GRANTED IN PART AND DENIED IN PART**. This case

---

[1] The Court's consideration has focused on the following documents:
- Memorandum of Points and Authorities in Support of Defendants' Motion to Sever and Transfer Venue, ECF No. 83-1 ("Motion" or "Mot.");
- Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendants' Motion to Sever and Transfer, ECF No. 87 ("Opp.")
- Reply in Further Support of Defendants' Motion to Sever and Transfer Venue, ECF No. 89 ("Repl.").

In an exercise of its discretion, the Court concludes that oral argument would not be of material assistance in resolve the pending Motion.

1

is severed as to three of the four Plaintiffs, each case to be transferred to their respective districts. The Court retains, however, what shall hereafter be captioned *Florence Immigrant Refugee Rights Project v. Department of Homeland Security*, Civ. A. No. 22-3118 (D.D.C.).

I.  **BACKGROUND**

The Court addressed this case's factual and procedural background at great length in its last opinion in this matter, *Am. for Immigrant Just. v. U.S. Dep't of Homeland Sec.*, Civ. A. No. 22-3118, 2023 WL 1438376 (D.D.C. Feb. 1, 2023) (hereinafter, "*AIJ*"). In their operative complaint, five[2] distinct legal services organizations seek a broad overhaul of all communications policies, technology, and access at four detention facilities, mostly on behalf of their clients (the vast majority of whom had not been identified). *Id.* at *1. Although each facility is ultimately answerable to Defendants—the Department of Homeland Security ("DHS"), the Secretary of Homeland Security, Immigration and Customs Enforcement ("ICE"), and the Acting Director of ICE—several layers of supervision separate Defendants from the local contractors entrusted with the day-to-day operation of each facility. *Id.*

Each Plaintiff is tied to a particular facility. *First*, Americans for Immigrant Justice ("AIJ") advances claims on behalf of its clients at Krome North Service Processing Center in Miami, Florida. *Id.* at *2. According to Defendants, and as is evidently discernable from the public record, Defendant ICE owns and operates Krome, but contracts Krome's operation to Akima Global Services. Notably, AIJ has in the recent past chosen to contest

---

[2] Only four remain. The Court has since dismissed Plaintiff Immigration Justice Campaign *sua sponte* for lack of standing. *AIJ*, 2023 WL 1438376, at *8.

their clients' conditions of confinement at Krome in the judicial district encompassing Krome and with their clients (not AIJ) as named plaintiffs. *Id.* (citing, e.g., *Gayle v. Meade*, Civ. A. No. 20-cv-21553 (MGC) (S.D. Fla.)).

In supporting declarations, AIJ addresses specific conditions that it considers to fall short of the relevant detention standards applicable to Krome, which are not applicable to other facilities. *AIJ*, 2023 WL 1438376, at *2. For example, AIJ complains that its attorneys cannot bring laptops or phones with them into visitation rooms, which is not required by the PBNDS, and that AIJ attorneys have had to wait up to an hour-and-a-half to use an attorney-client visitation room. *Id.* at *3. AIJ also claims that detainees "must make calls from telephones located in the open housing unit, which are within earshot of other detained individuals and guards;" detainees are not permitted to make phone calls from an administration office. *Id.* AIJ also alleges that the particular layout of Krome does not "provid[e] a reasonable number of telephones on which detainees can make [legal] calls without being overheard by staff or other detainees," in violation of section 5.6(F)(2). *Id.*

*Second*, Plaintiff Florence Immigrant and Refugee Rights Project ("FIRRP") advances claims on behalf of its clients detained at the Central Arizona Florence Correctional Complex ("Florence") in Florence, Arizona. *Id.* FIRRP claims that Florence has no private rooms in which documents may be passed between attorney and client; worse, visitation areas in which attorneys *can* share documents take place within a "cafeteria"-like setting. *Id.* at *4. FIRRP further alleges that legal calls made from all housing units "are never confidential" because other individuals are always within earshot, and "[n]o separate phones are provided for legal calls." *Id.* Like AIJ, FIRRP also

complains that the process for a free legal call is "extremely complicated" because it involves a "multi-step process." *Id.*. Additionally, FIRRP claims that "officials at Florence and ICE have told FIRRP that scheduling legal calls is not possible, largely due to lack of resources and cost." *Id.* (cleaned up). Finally, Defendants evidently concede that there is not VTC availability for attorney-client communications. Florence is managed and operated by a private prison company, CoreCivic. ECF No. 66-1 at ¶ 5.

*Third*, Plaintiff Immigration Services and Legal Advocacy ("ISLA") represents detained immigrants at River Correctional Center in Ferriday, Louisiana ("River"), among other institutions. *Id.* at *4. River is operated by a private prison company as well, LaSalle Corrections. ISLA maintains that the main visitation room seats at River seats interviewees within earshot of a table used for in-person visitation. *Id.* at *5. ISLA alleges that their "clients have told [them] that their phone calls with us take place at a desk in a hallway. There are multiple desks in that hallway where guards are sitting doing work." *Id.* These spaces are evidently the same as those used for prescheduled, attorney-client calls, even after it is ISLA that schedules the call with River staff. Although there is VTC functionality, Defendants admit that "[t]here are no privacy dividers at tablet kiosks" for VTC calls. ECF No. 71-3 at ¶ 5.

*Fourth*, Plaintiff Refugee and Immigrant Center for Education and Legal Services ("RAICES") at one point represented detainees at the Laredo Processing Center in Laredo, Texas. *Id.* at *5. It has expressly decided to forgo taking on any further Laredo detainees as clients unless and until Laredo provides RAICES easier access to detainees. *Id.* RAICES alleges that, at some point in the past year, the walls between the private visitation rooms were so thin that sound carried easily. *Id.* RAICES also complains that, when they

last provided legal services at Laredo, they could not bring laptops or cell phones into visitation rooms. *Id.* RAICES further claims that it cannot maintain a confidential call with a detainee (were RAICES to resume legal services to detainees at Laredo) because "other detained people and guards standing near the phone can hear our clients on the phone." *Id.* Like Florence, CoreCivic operates Laredo. ECF No. 66-3 at ¶ 2.

### II. DISCUSSION

#### A. Severance

The Court's discretion to sever claims into separate lawsuits springs from Federal Rule of Civil Procedure 21, which permits severance of "any claim against a party." Fed. R. Civ. P. 21; *see also M.M.M. on behalf of J.M.A. v. Sessions*, 319 F. Supp. 3d 290, 295 (D.D.C. 2018) (PLF). "In making this determination, courts consider multiple factors, including: (1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present common questions of law or fact; (3) concerns related to judicial economy, multiplicity of litigation, and orderly and efficient resolution of disputes; (4) the availability of witnesses and other evidentiary proof; and (5) the potential for confusion, undue delay, or prejudice to any party." *M.M.M.*, 319 F. Supp. 3d at 295 (citations omitted).

The Court previously confronted this question in a very similar case, *S. Poverty L. Ctr. v. U.S. Dep't of Homeland Sec.*, Civ. A. No. 18-0760 (CKK), 2019 WL 2077120 (D.D.C. 2019). As here, a legal services organization, the Southeast Immigrant Freedom Initiative ("SIFI") and through its parent organization the Southern Poverty Law Center ("SPLC"), sought better access to its clients at three ICE detention facilities. *Id.* at *1. Defendants, including ICE and DHS, moved to sever and transfer the case, characterizing the focus of the plaintiff's complaint as conditions of confinement at three distinct

detention facilities. *Id.* at *2. In denying the request to sever the matter, the Court focused on the plaintiff's allegation that their clients' "difficulties accessing counsel at all three facilities . . . . stem from Defendants' administration of national standards, such as the PBNDS." *Id.* In other words, because the case appeared to revolve around an administrative claim focused on conduct in the District of Columbia, severance was not warranted. *See id.* ("[T]he gravamen is not the practices of the different contractors running the three facilities, but rather Defendants' responsibility for enforcing their own standards.").

Over time, it became eminently clear the gravamen of the matter was, in fact, conditions of confinement at three facilities. First and foremost, the Court subsequently concluded that an administrative-law challenge revolving around DHS and ICE failed as a matter of law. *S. Poverty L. Ctr. v. U.S. Dep't of Homeland Sec.*, Civ. A. No. 18-0760 (CKK), 2023 WL 2564119, at *4-6 (D.D.C. Mar. 15, 2023). Moreover, after the Court entered a preliminary injunction in favor of the plaintiff on its punitive-detention claim, the case further centered on the precise details of each facility's restrictions on attorney-client communications. *See S. Poverty L. Ctr. v. U.S. Dep't of Homeland Sec.*, 605 F. Supp. 3d 157, 164-65 (D.D.C. 2022). In particular, the Court settled a lengthy and costly battle over Defendants' compliance with the Court's preliminary injunction, which necessitated site visits by a special monitor appointed by the Court. *See S. Poverty L. Ctr. v. U.S. Dep't of Homeland Sec.*, Civ. A. No. 18-0760 (CKK), 2022 WL 19037214, at *3 (D.D.C. June 30, 2022). The Court was in a particularly poor position to resolve the issues, given the geographical distance between the facilities and this jurisdiction. *See id.*

That said, earlier this year, the Court did not grant reconsideration of the Court's initial decision *S. Poverty L. Ctr.* to retain the case rather than transfer it. 2023 WL 2505429, at *1 (D.D.C. Mar. 8, 2023). The Court rested that decision exclusively on "judicial economy, both in [this] district and in the transferee's district." *Id.* (citing *Douglas v. Chariots for Hire*, 918 F. Supp. 2d 24, 31 (D.D.C. 2013) (JEB)). Because the parties had litigated the matter in *this* jurisdiction nearly to summary judgment over the course of several years, transfer and severance would serve neither the interests of judicial economy nor the orderly and efficient litigation of the issues before the Court. *See M.M.M.*, 319 F. Supp. 3d at 295.

Here, however, the Court is confronted with a matter that was filed less than a year ago and where discovery has yet to commence. Similarly, the Court has concluded that Plaintiffs' administrative-law claims are almost certain to fail. *AIJ*, 2023 WL 1438376, at *17-18. Only one Plaintiff demonstrated a likelihood of success on the merits to warrant preliminary relief, and even then on the same claim at issue in *S. Poverty L. Ctr.* which, again, is hyper-focused on particular conditions of confinement at a particular detention facility. *Id.* at *14. As a general matter, questions of law and fact in suits brought by detainees (or prisoners) regarding their conditions of confinement generally do not overlap between different detention facilities. *See C.G.B. v. Wolf*, 464 F. Supp. 3d 174, 209 (D.D.C. 2020) (CRC) (collecting cases). This is because, as here, the constitutionality of a detainee's conditions of confinement turn on individual decisions made by a particular administrator of a particular facility with different employees, different layouts, and different geographical locales. *See, e.g., McKinney v. Prosecutor's Off.*, No. 13-2553, 2014 WL 2574414, at *15 (D.N.J. June 4, 2014). Here, Plaintiffs, with no particular

connection to the District of Columbia, seek to litigate conditions of confinement at facilities substantially unrelated to each other by both geography and management. Therefore, the Court concludes that this matter must be severed as to each facility, and, thereby, each Plaintiff.

### B. Transfer

Having concluded that this matter must be severed, the Court must next turn to transfer. First, the Court must ask whether the transferee forum is one where the action "might have been brought" originally. 28 U.S.C. § 1404(a). Second, the Court must consider whether private and public interest factors weigh in favor of transfer. *E.g.*, *Lentz v. Eli Lilly & Co.*, 464 F. Supp. 2d 35, 36-37 (D.D.C. 2006) (ESH) (citation omitted).

When, as here, one or more defendants is a federal agency, or an officer or employee thereof sued in their official capacity, venue is generally permissible where:

> (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action.

28 U.S.C. § 1391(e)(1). Each of the Defendants in this case is a federal agency, or an officer or employee thereof sued in their official capacity. It is undisputed that venue is available in this jurisdiction, where a number of these Defendants reside. As for the proposed transferee fora, Plaintiffs concede that each respective action could have been brought in each transferee forum, because each Plaintiff resides in each respective forum. Opp. at 23.

That leaves the private and public interests to be weighed in considering transfer. The private factors are:

8

> (1) the plaintiffs' choice of forum, unless the balance of convenience is strongly in favor of the defendants; (2) the defendants' choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses of the plaintiff and defendant, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the ease of access to sources of proof.

*Greater Yellowstone Coal. v. Bosworth*, 180 F. Supp. 2d 124, 127 (D.D.C. 2001) (citation omitted).

First, although the "plaintiff's choice of forum is ordinarily entitled to deference," that choice is conferred considerably less deference when it is not the plaintiff's home forum, has few factual ties to the case at hand, and defendants seek to transfer to a plaintiff's home forum. *Nat'l Ass'n of Home Builders v. EPA*, 675 F. Supp. 2d 173, 179-80 (D.D.C. 2009). No Plaintiff has any particular tie to the District of Columbia. Indeed, each Plaintiff is at home almost exclusively in the district encompassing the facility at issue. Although Plaintiffs characterize this action as one against misfeasance in oversight, faulty oversight depends substantially on particular actions taken by individual contractors resident in differing facilities. *See AIJ*, 2023 WL 1438376, at *11 (punitive-detention claim), *19 (Rehabilitation Act claim). Moreover, to the extent that Plaintiff truly challenges federal oversight, that federal oversight is generally conducted closer to a particular facility, *e.g.*, ECF No. 66-2 at ¶ 1, another reason for transfer, *see Bourdon v. U.S. Dep't of Homeland Sec.*, 235 F. Supp. 3d 298, 306 (D.D.C. 2017) (CKK) (involving purported USCIS mismanagement).

Second, it is evident that the basis of Plaintiffs' claims arose in their respective home jurisdictions. *AIJ*, 2023 WL 1438376, at *2-6. As the Court discovered in *S. Poverty L. Ctr.*, the vast majority of relevant witnesses and information are located at or near each facility. This jurisdiction does not permit claims against federal agencies to proceed in the

9

District of Columbia simply because they reside here. *See Cameron v. Thornburgh*, 983 F.2d 253, 256 (D.C. Cir. 1993). Rather, the Court must evaluate, among other things, ease of access to sources of proof, sources which are predominantly Plaintiffs' respective clients who reside (or resided) at each respective facility. *See Aishat v. U.S. Dep't of Homeland Sec.*, 288 F. Supp. 3d 261, 270 (D.D.C. 2018) (JEB) (venue proper in Texas where "Dallas-based officials are [] likely the most relevant sources" for the matter). Therefore, the private interests weigh in favor of transfer.

The public interest factors affecting transfer include "(1) the transferee's familiarity with the governing laws and the pendency of related actions in the transferee's forum; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home." *Bosworth*, 180 F. Supp. 2d at 128. Each district "should be equally familiar with Plaintiff[s]' constitutional claims" even if, assuming *arguendo*, each particular district is relatively less accustomed to addressing one or more of each claim. *See S. Poverty L. Ctr.*, 2019 WL 2077120, at *3. Defendants appear to concede the relative congestion of calendars weigh against transfer, Mot. at 23, though, as Plaintiffs note, "congestion alone is not sufficient reason for transfer," *Starnes v. McGuire*, 512 F.2d 918, 932 (D.C. Cir. 1974). Lastly, there is undoubtedly a national interest in ensuring that new immigrants to our country do not suffer constitutional injury immediately upon their arrival. At the same time, local districts have an interest in adjudicating the purportedly unlawful behavior of their neighbors. As such, and in light of the legal development of this case and the Court's subsequent rulings in *S. Poverty L. Ctr.*, the Court concludes that the third factor is in equipoise.

The public factors weigh slightly differently as to Plaintiff FIRRP. As to FIRRP, the Court has already entered preliminary relief. Monitoring a preliminary injunction that a transferee court did not enter may present additional problems for judicial economy. *See Exxon Corp. v. U.S. Dep't of Energy*, 594 F. Supp. 84, 92 (D. Del. 1984) (transfer warranted to jurisdiction where injunction had already been entered in similar matter). In this regard, an exercise of discretion is warranted as to FIRRP only.

### III.   CONCLUSION

For the foregoing reasons, Defendants' [93] Motion to Sever and Transfer Venue is **GRANTED IN PART AND DENIED IN PART**. This case is severed as to three of the four Plaintiffs, each case to be transferred to their respective districts. The Court retains, however, what shall hereafter be captioned *Florence Immigrant Refugee Rights Project v. Department of Homeland Security*, Civ. A. No. 22-3118 (D.D.C.). An appropriate order accompanies this memorandum opinion.

Dated: July 6, 2023

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge